# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

MARIA OLGA ZAVALA                  CIVIL ACTION NO.

VERSUS                                        17-656-JWD-EWD

CITY OF BATON ROUGE, ET AL

## NOTICE AND ORDER

On September 23, 2019, Plaintiff Maria O. Zavala ("Plaintiff") filed her Motion to Compel against Defendant CorrectHealth East Baton Rouge, LLC ("CorrectHealth") seeking an order of the Court compelling CorrectHealth to produce autopsy documents prepared regarding the death of Plaintiff's son, Louis Fano.[1] CorrectHealth has refused to produce these documents on the grounds of privilege. On October 16, 2019, following a telephone conference with the Court,[2] CorrectHealth filed its Opposition to the Motion to Compel, to which Plaintiff filed her Reply.[3]

Plaintiff contends that she propounded Requests for Production of Documents on January 9, 2019, wherein she collectively sought, through several different requests, "any document composed by Defendant CorrectHealth that reviews the reasons for, circumstances of, and events leading up to Mr. Fano's suicide on February 2, 2017" at EBRPP,[4] including the documents that should have been generated by operation of CorrectHealth's "Procedure In the Event of An Inmate Death" Policy (the "Inmate Death Policy"), as well as other applicable policies.[5] According to Plaintiff, the Inmate Death Policy requires review of all inmate deaths to determine the appropriateness of clinical care. This review process includes a multidisciplinary mortality review

---

[1] R. Doc. 118. Plaintiff alleges that various Defendants failed to protect Fano from alleged harm and deliberate indifference to his medical needs under 42 U.S.C. § 1983. Fano committed suicide in February 2017 while incarcerated in the East Baton Rouge Parish Prison. R. Doc. 1, ¶¶ 54, 106 *et seq.*
[2] R. Doc. 123.
[3] R. Docs. 127, 130.
[4] R. Doc. 118-1, pp. 2-6 *and see* R. Doc. 118-3 (Requests for Production). The specific requests are reproduced in the foregoing.
[5] R. Doc. 118-5.

and a psychological autopsy (if the death is caused by suicide), which results in the production of the autopsy documents.[6] Plaintiff contends that, despite several conferences, CorrectHealth has maintained its objection to producing the autopsy documents on the basis of privilege. However, Plaintiff avers that CorrectHealth failed to produce a privilege log with its discovery responses and thus has not met its burden of showing that a privilege applies.[7] CorrectHealth argues that the autopsy documents are privileged under the attorney-client privilege, self-critical analysis privilege, and/or attorney work product doctrine. CorrectHealth contends that it has not waived any privileges because, subsequent to the telephone conference with the Court, it produced a privilege log and a supplemental privilege log to Plaintiff.[8]

*Equal Employment Opportunity Commission v. BDO USA, LLP*,[9] sets forth the following general rules regarding the assertion of the attorney-client privilege:[10] "[f]or a communication to be protected under the privilege, the proponent 'must prove: (1) that he made a *confidential* communication; (2) to a lawyer or his subordinate; (3) for the primary purpose of securing either a legal opinion or legal services, or assistance in some legal proceeding.'"[11] The

---

[6] R. Doc. 118-1, p. 5 and R. Doc. 118-5.
[7] R. Doc. 118-1, pp. 6, 13-14 and R. Docs. 118-7, pp. 3-4 and R. Doc. 118-8. *See also* R. Doc. 118-4 (Responses to Requests for Production). Plaintiff also argues that the autopsy documents are not privileged because they are created in the ordinary course of business by operation of CorrectHealth's policies.
[8] R. Doc. 127, pp. 10-11, *citing Louisiana CNI, LLC v. Landmark American Ins. Co*., 2006 WL 8435026 (M.D. La. 2006); R. Docs. 127-5 and 127-6. CorrectHealth's privilege logs do not assert work-product privilege and therefore that privilege is not at issue.
[9] 876 F.3d 690, 2017 WL 5494237 (5th Cir. 2017).
[10] There does not appear to be similar guidance by the Fifth Circuit on the "self-critical analysis" privilege, as the Fifth Circuit has declined to expressly recognize the privilege and has explicitly rejected its applicability in some cases. *See, e.g., In re Kaiser Aluminum & Chem. Co.,* 214 F.3d 586, 593 (5th Cir. 2000) (rejecting self-critical analysis privilege asserted in response to U.S. government agency subpoenas seeking pre-accident reports) ("As for the self-evaluation privilege, Fed.R.Evid. 501 states that privileges 'shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.' Privileges 'are not lightly created nor expansively construed, for they are in derogation of the search for truth.' *United States v. Nixon.* The Fifth Circuit has not recognized the self-evaluation privilege, and 'courts with apparent uniformity have refused its application where, as here, the documents in question have been sought by a governmental agency.'")(internal footnotes omitted).
[11] *Id.* at *3 (citing *United States v. Robinson*, 121 F.3d 971, 974 (5th Cir. 1997)). *See also Swoboda v. Manders*, 2016 WL 2930962, at *5, n. 41 (M.D. La. May 19, 2016) (recognizing that not all communications between an attorney and his client are privileged, "'[f]or example, no privilege attaches when an attorney performs investigative work in the capacity of an insurance claims adjuster, rather than as a lawyer.'") (citing *In re Allen*, 106 F.3d 582, 602 (4th Cir. 1997)); *U.S. v. Davis*, 636 F.2d 1028, 1043 (5th Cir. 1981) (explaining that work papers produced by an attorney in

2

attorney client privilege does not extend to materials assembled in the ordinary course of business, or which provide purely factual data.[12]

The party claiming the privilege bears the burden of proof, and this is a highly fact-specific inquiry.[13] Ambiguities with respect to whether the elements of a privilege claim have been met are construed against the proponent of the privilege.[14] Once the privilege is established, the burden shifts to the party seeking the documents to prove an applicable exception.[15] Pursuant to Local Civil Rule 26(c):

> A party withholding information claimed privileged or otherwise protected must submit a privilege log that contains at least the following information: **name** of the document, electronically stored information, or tangible things; **description** of the document, electronically stored information, or tangible thing, which description must **include each requisite element of the privilege** or protection asserted; **date**; **author**(s); **recipient**(s); and **nature of the privilege**. (emphasis added)

*See also* Fed. R. Civ. P. 26(b)(5). "[A] privilege log's description of each document and its contents must provide sufficient information to permit courts and other parties to 'test[ ] the merits of' the privilege claim" and "courts have stated that simply describing a lawyer's advice as 'legal,' without more, is conclusory and insufficient to carry out the proponent's burden of establishing attorney-client privilege." "The standard for testing the adequacy of the privilege log is whether, as to each document, the entry sets forth facts that 'would suffice to establish each element of the privilege or immunity that is claimed.' The focus is on the specific descriptive portion of the log, and 'not on conclusory invocations of the privilege or work-product rule, since the burden of the

---

the course of preparing client's tax returns were not privileged "because although preparation of tax returns by itself may require some knowledge of the law, it is primarily an accounting service. Communications relating to that service should therefore not be privileged, even though performed by a lawyer.").
[12] *See U.S. v. Louisiana*, No. 11-470, 2015 WL 4619561, at *5 (M.D. La. July 31, 2015).
[13] *BDO*, 2017 WL 5494237, at *3.
[14] *Id.*
[15] *Id.*

party withholding documents cannot be discharged by mere conclusory' assertions.[16] "The party claiming the privilege must 'describe those documents to the best of its ability without revealing the information privileged.'"[17]

While CorrectHealth has asserted that the requested documents are protected by the attorney-client and "self-critical analysis" privileges in two privilege logs, the privilege logs[18] are insufficient under Local Rule 26(c). CorrectHealth's initial privilege log merely states: "Dates of Reviews 05/09/17 and 08/03/17," "Name of Document Quality Assurance/Morbidity & Mortality Review," the name and title of the author ("Stacy Scott, Esq. counsel for CorrectHealth"), the names of nine CorrectHealth employees and counsel who were "Participants," the privileges asserted ("Attorney client/self-critical analysis (La. R.S. 13:3715.3)," and the number of pages (five). Likewise, the supplemental privilege log merely states: "Date Undated," "Name of Document Psychological Autopsy," the name of the author, (Cathy Schley), to whom the document was directed ("Stacy Scott, Esq. Correcthealth counsel per Policy & procedures CSO-A-10.0, CSO-G-5.0"), the privileges asserted (same as above) and the number of pages (four). CorrectHealth has not provided any descriptions of the contents of these documents as required by Local Rule 26(c) or any detail to determine the nature of the advice sought or that the "self-critical analysis" privilege applies.[19] As currently drafted, these two logs are insufficient to carry CorrectHealth's burden of establishing that the underlying documents are protected by either the attorney-client or "self-critical analysis" privilege.

---

[16] *Chemtech Royalty Associates, L.P. v. U.S.*, Nos. 05-944, 06-258, 07-405, 2009 WL 854358, at *3 (M.D. La. March 30, 2009) (internal citations omitted). *See also U.S. v. Louisiana*, No. 11-470, 2015 WL 2453719, at *1 (M.D. La. May 22, 2015) (same). "Objections based on the attorney client privilege or work product doctrine "can only be sustained if they are both properly asserted and the facts supporting the privileges are established by the evidence, not merely declared by lawyer argument." *U.S. v. Louisiana*, 2015 WL 2453719, at *2 (citing *Estate of Manship v. U.S.*, No. 04-91, 232 F.R.D. 552, 561 (M.D. La. Dec. 8, 2005).
[17] *Id.*
[18] R. Docs. 127-5 and 127-6.
[19] Nothing in this Notice and Order should be construed as a determination by the Court that either privilege has merit.

"[T]he majority approach by courts, when confronted by a privilege log that is technically deficient and that does not appear to have been prepared in bad faith, is to allow the party who submitted the log a short opportunity to amend the log prior to imposing the drastic remedy of waiver."[20] CorrectHealth will be given the opportunity to revise its privilege logs to provide sufficient descriptions of the underlying documents and alleged legal advice sought or provided in connection therewith and shall submit any revised privilege logs to Plaintiff by no later than November 15, 2019.

**IT IS ORDERED** that Defendant CorrectHealth East Baton Rouge, LLC may provide revised privilege logs to Plaintiff, Maria Zavala, by no later than **November 15, 2019**.

**IT IS FURTHER ORDERED** that Plaintiff, Maria Zavala, shall file a Notice with the Court by no later than **November 22, 2019** advising whether revised privilege logs have been received and, if so, whether the revised logs resolve the issues raised in the Motion to Compel. If the revised privilege logs do not resolve the Motion to Compel, Plaintiff shall attach the revised privilege logs to the Notice.

Signed in Baton Rouge, Louisiana, on November 4, 2019.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[20] *Cashman Equipment Corp. v. Rozel Operating Co.*, No. 08-363, 2009 WL 2487984, at *2 (M.D. La. Aug. 11, 2009) (collecting cases); *see also Chemtech*, 2009 WL 854358, at *5 (requiring plaintiff to provide a revised privilege log and noting "[a]t this juncture, the court will not order that any of the 379 documents be produced, and will not conduct an in camera review of the documents. Obviously, such a log will require some work, but an in camera inspection of 379 documents is no substitute for an informative log.").